IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-CV-0875-MSK-KMT

DAVID DALRYMPLE,

    Plaintiff,

*v.*

LUIS A. ROSA, Assistant Warden, KCCC;
TAYLOR, Unit Manager, KCCC; and
SWARTZ, Property Officer, KCCC,

    Defendants.

---

# OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court upon the parties' Cross-Motions for Summary Judgment (**## 71, 89**),[1] the Plaintiff's response (**# 90**), and the Defendants' reply (**# 91**); and the

---

[1] The deadline for filing dispositive motions in this case was August 1, 2017 (**# 59**). The Defendants filed their summary judgment motion on that date. Shortly thereafter, Mr. Dalrymple filed a response that, in essence, sought to stay determination of the summary judgment pursuant to Fed. R. Civ. P. 56(d). Further discovery ensued and the Court ultimately granted (**# 83, 88**) Mr. Dalrymple additional time to file a substantive response to the Defendants' summary judgment motion. Mr. Dalrymple then filed both a response (**# 90**) to the Defendants' motion and his own cross-motion for summary judgment (**# 89**). Mr. Dalrymple had never sought nor obtained leave to file his own cross-motion beyond the dispositive motion deadline. The Defendants did not respond to Mr. Dalrymple's cross-motion, either on the merits or to complain of its untimeliness.

    The Court finds, *sua sponte*, that it would be inappropriate to consider Mr. Dalrymple's untimely cross- motion, and the Court therefore denies that motion. (In any event, consideration of that cross-motion would not materially alter the outcome herein.) However, the Court will deem the contents of that motion to supplement, where necessary, Mr. Dalrymple's response to the Defendants' motion.

Plaintiff's Motion to Show Cause to Allow Issuance of Subpoenas **(# 92)**. For the following reasons, the Defendants' motion is granted, in part, and the remaining motions are denied.

## I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

## II. BACKGROUND

Except as noted, the following facts are derived from Mr. Dalrymple's declaration **(# 89)**. Mr. Dalrymple, appearing *pro se*,[2] is a prisoner in the custody of the Idaho Department of Corrections ("IDOC"). For reasons that are not disclosed in the record, in 2012, IDOC arranged for him to be housed in the Kit Carson Correctional Center ("KCCC") in Burlington, Colorado.[3]

At the time of his move to KCCC, Mr. Dalrymple was in possession of four books on the subject of hypnotism. Mr. Dalrymple intended to use these books as support for legal filings he intended to make in his Idaho criminal case. Mr. Dalrymple states that all four of the books were approved by KCCC staff during his "initial intake process." Between 2012 and March 2015, he ordered four more hypnotism books, again ostensibly for research purposes. Three of the books were approved by KCCC staff; the fourth was initially confiscated, but upon review by KCCC staff, the book was approved and given to Mr. Dalrymple.

---

[2] In considering Mr. Dalrymple's filings, the Court is mindful of his pro se status, and accordingly construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, pro se status does not relieve Mr. Dalrymple of the obligation to muster sufficient evidence to demonstrate a colorable claim under the applicable substantive law. *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994).

[3] This unorthodox arrangement contributes to the confusion in this case. It is not clear whether Mr. Dalrymple was then subject to rules and regulations set by IDOC (as an IDOC prisoner), of KCCC or the Colorado Department of Corrections (due to the situs of his housing), of both, some combination of the two, or some other set of rules. The parties' filings shed little meaningful light on this question.

In late 2015, Mr. Dalrymple ordered duplicate copies of three of the books, intending to attach the copies as exhibits to a motion he intended to file in his criminal case. Mr. Dalrymple states that, on January 3, 2016, Defendant Schwartz confiscated the three books. Mr. Dalrymple does not recite what explanation he was given by Mr. Schwartz at the time, and Mr. Schwartz has not tendered an affidavit or deposition testimony giving his version of why the initial confiscation occurred. Mr. Dalrymple complained of the confiscation to Defendant Rosa, the Assistant Warden at KCCC, explaining that the confiscated books were simply copies of books that Mr. Dalrymple already had in his possession. Mr. Rosa then directed Mr. Schwartz to confiscate Mr. Dalrymple's original copies of the three books as well. Once again, Mr. Dalrymple does not recite any justification that Mr. Rosa gave for the second confiscation.

The Court pauses here to consult the materials submitted by the Defendants in support of their summary judgment motion. Mr. Rosa's affidavit seems to offer two conflicting justifications for the confiscation of Mr. Dalrymple's books. First, Mr. Rosa makes reference to a "Reading Committee" at KCCC that ostensibly vets inmates' possession of reading material. Mr. Rosa makes clear that neither he nor any other Defendant was a member of that committee. Mr. Rosa refers to "the committee's decision to confiscate Mr. Dalrymple's hypnosis books." Then, Mr. Rosa states that "the basis for the confiscation of the books was that [IDOC] did not allow Mr. Dalrymple to possess hypnosis books." Attempting to harmonize Mr. Rosa's affidavit, the Court assumes that Mr. Rosa is asserting that the Reading Committee at KCCC consulted IDOC about whether Mr. Dalrymple could possess the books, that IDOC responded

that he could not, and that the Reading Committee then instructed Mr. Schwartz and/or Mr. Rosa to confiscate the books.[4]

Returning to Mr. Dalrymple's version of events, he states that he then submitted a grievance concerning the confiscation of the books to the Defendants here. All three Defendants met with Mr. Dalrymple and offered yet another justification for the confiscation: that his "status as a sex offender forbid [him] from having this type of publication." Mr. Dalrymple's declaration concludes with the statement that he is now back in a facility in Idaho, that "the publications in question in this litigation do not present any security risk," and that he is presently in possession of all three of the confiscated books.

Mr. Dalrymple's suit here asserts two claims, both pursuant to 42 U.S.C. § 1983: (i) that the confiscation of the three books violated his right to Free Speech (or, arguably, Freedom of the Press) as secured by the First Amendment to the U.S. Constitution; and (ii) that the confiscation of the books violated his First Amendment right to petition the government for redress by depriving him of access to the courts, insofar as he was unable to file the books as exhibits to a motion in his criminal case.

---

[4] The Defendants have also submitted the affidavit of Michael Miller, the Warden of another Colorado prison facility, on the subject of "the restriction/confiscation of inmate property." Mr. Miller's affidavit is non-committal on the subject of which state's regulations govern Mr. Dalrymple's ability to possess certain publications; Mr. Miller states his familiarity with Colorado Department of Corrections policies and states that "As Plaintiff is an Idaho inmate, Idaho DOC regulations may also apply." (Emphasis added.) Mr. Miller states that decisions about inmate access to publications will be made by Reading Committees, which appear to be convened on a facility-by-facility basis. The Committees make a determination as to whether an inmate can or cannot posses a publication. Mr. Miller repeatedly emphasizes that such determinations are made by the Committees on a "case-by-case basis," taking into account the inmate involved and the nature of the publication, and states that no particular regulation or policy governs the decision. Mr. Miller states that the Committee delivers its decision to the Warden of the facility, but appears to suggest that the Warden (or, in certain cases, Assistant Warden) "is the final decision maker and has final authority over" the decision, such that he or she could conceivably overrule the Committee's decision. Mr. Miller does not purport to have any personal knowledge about the specific decisions that were made in Mr. Dalrymple's case.

4

The Defendants' summary judgment motion is somewhat muddled. It first argues that none of the named Defendants personally participated in the confiscation of Mr. Dalrymple's books, arguing instead that the decision to confiscate the books was made by the members of the Reading Committee, none of whom were the Defendants. The Defendants then argue that Mr. Dalrymple cannot establish any §1983 claim, in that, generally, the Defendants lacked a sufficiently culpable state of mind and that Mr. Dalrymple cannot establish a claim premised upon denial of access to the courts because he has not come forward with facts showing that the confiscation of the books caused him tangible prejudice in his ability to pursue a non-frivolous criminal appeal. The also allege, in this argument, that the confiscation of the books was made at the direction of IDOC.[5] Finally, the Defendants argue that, to the extent Mr. Dalrymple can state a claim, they[6] are entitled to qualified immunity because Mr. Dalrymple cannot show that the contours of his claim are "clearly established," given that IDOC gave the direction that the books be confiscated.

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is

---

[5] In support of this contention, the Defendants do not point to any contemporaneous communications that anyone at KCCC may hav had with IDOC in January 2016. Instead, they cite to grievance forms and an internal IDOC e-mail exchange from December 2016, apparently after Mr. Dalrymple had been returned to Idaho. Needless to say, discussions from December 2016 shed no light on what instructions were sought or received in January 2016.

[6] The qualified immunity discussion in the Defendants' motion concludes with a statement that "No particularized, clearly established right of any Plaintiff could form the basis for any claim against Mr. Walker in this case." (Emphasis added.) The Court assumes that the reference to a "Mr. Walker' is a vestige of a sloppy cut-and-paste job from a different case, and that the Defendants intend to argue here that Mr. Dalrymple cannot show that his claims against any of these Defendants are "clearly established."

5

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent

6

evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV. DISCUSSION

Given the issues raised here, the Court need not separately iterate the elements of each of Mr. Dalrymple's claims. It is sufficient to observe that prison officials may restrict an inmate's ability to possess reading material if such a restriction is justified by legitimate penological interests under the familiar *Turner v. Safley*, 482 U.S. 78 (1987), analysis. *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

### A. Personal participation

The Defendants' first argument is that Mr. Dalrymple cannot establish a claim (presumably either of his claims), because he cannot show that any of the Defendants personally participated in the constitutional deprivation. An essential element of a § 1983 claim is that each named defendant personally participated in acts that give rise to the claim. *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011).

The Court rejects that argument for several reasons. First, and perhaps most simply, it is undisputed that both Mr. Schwartz and Mr. Rosa were directly involved in the confiscation of Mr. Dalrymple's books. The first confiscation (that of the copies of the books) was effectuated by Mr. Schwartz himself; the second confiscation (that of Mr. Dalrymple's original books) was effectuated by Mr. Schwartz upon the direct instruction of Mr. Rosa. The Defendants argue that they executed the confiscation at the instruction of some other entity, but that argument is directed at a different element – culpable state of mind – rather than personal participation. *See generally Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (§1983 claim requires personal participation, a causal connection, and a culpable state of mind). For purposes of the

personal participation element, all that is necessary is that the defendant played a role in the deprivation, and there is no dispute that Mr. Schwartz and Mr. Rosa did here.

Second, although the Defendants argue that Mr. Schwartz and Mr. Rosa were simply carrying out instructions given by someone else to confiscate Mr. Dalrymple's books, the record, taken in the light most favorable to Mr. Dalrymple, calls that factual assertion into question. The Defendants have offered two different explanations as to where that directive came from: the Reading Committee at KCCC, or from IDOC itself. Neither contention is particularly well-supported – the Defendants have not, for example, offered an affidavit from a Reading Committee member who participated in the decision to declare Mr. Dalrymple's books contraband, nor have they adduced contemporaneous records from IDOC directing KCCC to confiscate the books. Rather, the Defendants rely solely on Mr. Rosa's affidavit, which is fairly oblique in its identification of the decision-making party.[7] Indeed, consistent with Mr. Miller's affidavit and as intimated in Mr. Rosa's, there is even a third possible decisionmaker: that Mr. Rosa, as the Assistant Warden at KCCC, had the final say as to whether to accept or reject the Reading Committee's determination that the books should be confiscated.[8]

The Defendants' pointing to IDOC as the final decisionmaker on the question of confiscation is further undercut by Mr. Dalrymple's contention – which the Court accepts as true for purposes of this motion – that IDOC currently allows him to possess the very books in

---

[7] It also fails to distinguish between the two confiscation events. It is not clear whether the Reading Committee or IDOC ostensibly directed both confiscations, or whether the first confiscation might have been precipitated by Mr. Schwartz of his own accord.

[8] Even this issue is left unclear by Mr. Rosa's affidavit. On the one hand, he states that, because Mr. Dalrymple was in the custody of IDOC, "the committee is bound by [a] determination [by IDOC that the property should be confiscated] and has no discretion regarding that property." (Emphasis added.) On the other hand, Mr. Rosa states that he "reviewed the committee's decision to confiscate Mr. Dalrymple's hypnosis books," an act that would seem to be unnecessary if Mr. Rosa himself lacked the authority to overrule it.

8

question. If IDOC permits Mr. Dalrymple to have the books, it is extremely unlikely that IDOC would have instructed KCCC to confiscate the same books, making it more likely that the actual decision rested with the Reading Committee or Mr. Rosa. The Court need not attempt to resolve the matter at this time; it is sufficient to observe that the evidence regarding who decided to direct the confiscation of Mr. Dalrymple's books is sufficiently unclear that a trial is necessary. Accordingly, the Court denies Mr. Rosa and Mr. Schwartz's motion for summary judgment on this ground.

The situation is different with Defendant Taylor. Mr. Taylor does not appear in Mr. Dalrymple's narrative until after the confiscations occurred, and Mr. Dalrymple "contacted [Mr. Taylor] by concern form and met with [him] about the return of my publications." Thus, Mr. Dalrymple does not allege that Mr. Taylor was involved in the confiscations themselves, but rather, that he failed to intercede after the fact to remedy the confiscations. The 10th Circuit has repeatedly held that a prison official's denial of an inmate's grievance, without having been involved in the constitutional deprivation that led to the grievance, does not suffice as personal participation. *Duncan v. Hickenlooper*, 631 Fed.Appx. 644, 651 (10th Cir. 2015), *citing Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012). Accordingly, the Court finds that Mr. Dalrymple has failed to adequately allege Mr. Taylor's personal participation in any deprivation, warranting summary judgment in Mr. Taylor's favor.

**B. State of mind**

The Defendants' second argument is somewhat unclear. They seem to argue that Mr. Rosa and Mr. Schwartz lacked the required state of mind to commit a constitutional deprivation, namely, deliberate indifference to Mr. Dalrymple's First Amendment rights. *See e.g. Dodds*, 614

F.3d at 1204. They also argue that, for purposes of his access to the courts claim, Mr. Dalrymple has not alleged that the confiscation of his books actually prejudiced his ability to file his motion.

The discussion above sufficiently disposes of the first point. Because it remains unclear precisely <u>who</u> directed the confiscation of Mr. Dalrymple's books on either occasion, there is a genuine dispute of fact as to whether Mr. Rosa or Mr. Schwartz possessed the requisite state of mind when participating in that confiscation. <u>If</u> the Defendants can ultimately demonstrate that IDOC directed the confiscations, and <u>if</u> the Defendants can show that they lacked any ability to contravene that instruction, they might arguably prevail by challenging Mr. Dalrymple's ability to show their culpable state of mind. On the other hand, if Mr. Dalrymple is able to show that neither IDOC nor a Reading Committee controlled the decision, and that Mr. Schwartz and Mr. Rosa decided, on their own, to confiscate the books, Mr. Dalrymple is likely to succeed. This issue will have to be resolved by trial.

As to the second point, on his claim sounding in denial of access to the courts, Mr. Dalrymple must show that the confiscation of his books "hindered him in petitioning for post-conviction relief." *Davis v. Arkansas Valley Correctional Facility,* 99 Fed.Appx. 838, 843 (10th Cir. 2004), *citing Lewis v. Casey*, 518 U.S. 343, 346 (1996). Notably, however, the Defendants do not come forward with evidence to suggest that Mr. Dalrymple has <u>not</u> been hindered in his Idaho post-conviction proceedings -- *e.g.* by demonstrating that Mr. Dalrymple filed his intended motion despite the confiscation of the books, or that the Idaho court dismissed his claims as frivolous. Fed. R. Civ. P. 56(c)(1) places the initial burden on the summary judgment movant to show, via citation to evidence, that the non-movant cannot establish a particular fact; it is not sufficient for a movant to nakedly declare that the non-movant cannot prove an element, then sit back and await a response. Because the Defendants have not satisfied their initial Rule 56(c)(1)

burden to show that Mr. Dalrymple <u>cannot</u> establish that the confiscation hindered his post-conviction proceedings, summary judgment on this ground is denied.

In any event, the Court takes the facts in the light most favorable to Mr. Dalrymple. He has stated that issues relating to hypnotism are pertinent to the post-conviction motions he intends to file, and in the absence of contrary evidence, the Court treats those assertions as true. He has stated that he intended to submit the confiscated books as evidence in support of his post-conviction motion, and was prevented from doing so due to the confiscation of the books, and the Court treats that assertion as true as well. As between Mr. Dalrymple's facts, on the one hand, and the absence of any evidence by the Defendants on the other, the Court is satisfied that Mr. Dalrymple has demonstrated a triable issue of fact as to whether his ability to pursue his post-conviction motion was hindered by the Defendants' confiscation of his intended exhibits.

### C. Qualified immunity

Finally, the Court turns to the Defendants' arguments that they are entitled to qualified immunity. Specifically, the Defendants contend that Mr. Dalrymple cannot show that the contours of the right he asserts – his First Amendment right to possess certain reading material and to access the courts – are "clearly established" in the circumstances presented herein. To defeat a invocation of qualified immunity's "clearly established" prong, Mr. Dalrymple must demonstrate that the Supreme Court, 10th Circuit, or weight of authority from other circuits, has recognized the existence of the claimed constitutional right in the particular circumstances presented here. *Knopf v. Williams*, 884F.3d 939 (10th Cir. 2018). However, even at this stage, the Court construes the facts underlying Mr. Dalrymple's claim in the light most favorable to him. *Dahn v. Amedei*, 867 F.3d 1178, 1184 (10th Cir. 2017).

Because, as discussed above, there is a genuine dispute of fact as to who made the ultimate decision to confiscate Mr. Dalrymple's books, the Court takes the possible facts in the light most favorable to Mr. Dalrymple. For the reasons set forth above, it is fair to conclude that the decision for the first confiscation was made by Mr. Schwartz – Mr. Dalrymple's version of the events does not identify another actor involved and the Defendants' evidence does not unambiguously point to a different decisionmaker for this confiscation – and the decision for the second confiscation was made by Mr. Rosa (with the Reading Commitee or IDOC supplying only recommendations). Thus, the question for the qualified immunity analysis is whether courts have recognized First Amendment claims where an inmate alleges that a staff member or Assistant Warden decided to confiscate, without cause, an item of property intended to be used as evidence in support of the inmate's post-conviction proceedings. They have. *Williams v. Hansen*, 837 F.3d 809, 810 (7th Cir. 2016) (confiscation without cause of a death certificate inmate needed for post-conviction motion); *Tyler v. Woodson*, 597 F.2d 643 (8th Cir. 1979) (confiscation without cause of legal papers that impaired inmate's ability to defend himself in criminal proceedings stated claim); *see also Sigafus v. Brown*, 416 F.2d 105, 107 (7th Cir. 1969) (confiscation of legal papers that inmate intended to use for hearing violated Due Process clause). Thus, the Court finds that the Defendants are not entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(# 71)** is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted to Mr. Taylor on all claims, and shall enter at the conclusion of proceedings. The Court denies Mr. Rosa and Mr. Schwartz's motions for summary judgment, and the claims against them shall proceed to trial. Mr. Dalrymple's Motion for Summary Judgment **(# 89)** is **DENIED** as untimely.

Because Mr. Dalrymple's claims will be proceeding to trial, and because of his incarceration out of state, the Court finds it appropriate to recommend the appointment of *pro bono* counsel to assist him. The Clerk of the Court shall attempt to locate an attorney willing to represent Mr. Dalrymple *pro bono*. Mr. Dalrymple is advised that, unless and until counsel enters an appearance on his behalf, he remains obligated to pursue this litigation in his *pro se* capacity. Within 14 days of entry of appearance by counsel for Mr. Dalrymple, or within 30 days of the date of this Order in any event, the parties shall jointly contact chambers to set a Pretrial Conference and shall begin preparation of a Proposed Pretrial Order in conformance with Docket # 30.

Dated this 28th day of March, 2018.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge